

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

January 16, 1974

The Honorable Raymond W. Vowell
State Department of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Opinion No. H- 211

Re: Availability of funds to
establish a record file required
by § 11.17, Title 2, Family Code,
63rd Leg. and obligation of Dept.
of Public Welfare to carry out
provisions of the Code for which
there are no appropriations.

Dear Mr. Vowell:

Your opinion request concerns the problem of financing the program
assigned to your department under various provisions of Title 2 of the Family
Code, (Acts 1973, 63rd Leg., R.S., ch. 543, p. 1411).

Your first two questions concern § 11.17 of the Code, which requires your
department to establish and maintain a central record file of suits affecting
the parent-child relationship. Subsection (c) of § 11.17 provides:

> "On the written request of a court or of an
> attorney, the department shall identify the court
> which last had jurisdiction of the child in a suit
> affecting the parent-child relationship and give the
> docket number of the suit, or state that the child
> has not been the subject of a suit affecting the
> parent-child relationship. The child shall be
> identified in the request by name, birthdate, and
> place of birth. The department shall transmit
> this information within 10 days after the day the
> request is received and <u>may charge a reasonable
> fee to cover the cost of this service.</u>" (emphasis
> added)

Your first question is whether the emphasized language constitutes an appropriation of the reasonable fee, if any, to your department, there being no such "specific appropriation" in the portion of the Appropriation Act applicable to your Department. See Article 8, § 6, Constitution of Texas.

In our opinion, the language does not constitute an appropriation. We are not unmindful of the language in cases such as Pickle v. Finley, 44 S. W. 480 (Tex. 1898) and National Biscuit Company v. State of Texas, 135 S. W. 2d 687 (Tex. 1940), that no specific words are necessary in order to make an appropriation; that an appropriation may be made by implication when the language employed leads to the belief that such was the intent of the Legislature; and that, where an appropriation is made of all funds coming from certain sources and deposited in a special fund for a designated purpose, it is not necessary for the appropriating act to name a certain or even a maximum sum. And see Attorney General Opinions C-248 (1964), V-887 (1949), V-895 (1949), V-1255 (1951).

However, these authorities interpret statutory language clearly indicating an intention to appropriate funds. For instance, in Attorney General Opinion V-887, the following statutory language was involved:

> "All license fees collected by the Commissioner of Agriculture under the provisions hereof shall be placed in a special fund in the State Treasury to be known as 'The 2, 4-D License Fund,' which fund shall be available to the Commissioner of Agriculture for the purpose of defraying expenses which accrue in the administration of the provisions hereof and same shall be paid out by the State Treasurer upon warrants based upon vouchers issued therefor by the Commissioner of Agriculture."

On the other hand, in Attorney General Opinion H-154 (1973) this office was "unable to find in Article 5521f, V. T. C. S., any language of appropriation", in a statute which provided:

"(a) The board [Performance Certification Board]
with the advice of the department [of Labor Statis-
tics] shall establish a schedule of fees to pay the
cost incurred by the department for the work
relating to the administration and enforcement
of this Act. . .

. . .

"(d) All fees shall be paid to the state treasury
and placed in a special account for the use of the
department in the administration and enforcement
of this Act. "

The language in § 11.17(c) of the Family Code does not even "earmark" the
funds when they are placed in the State Treasury and does not appropriate them
to your department expressly or by implication.

Your next question, contingent upon a negative answer to the first question,
inquires, "to what extent is the Department obligated to implement this program,
for which it has thereby received no appropriation?" This question is similar
to your remaining questions and they will be discussed together.

Your next question asks:

"It has been estimated that the cost of establishing
and maintaining the central record file may be as
much as $250,000 for the first year; yet, at no point
in the currently effective Appropriations Act has the
Department received any specific appropriation to
meet this expense. Therefore, we are requesting
your consideration and guidance with respect to the
following question:

" ' To what extent is the Department obligated to
implement the program established by Section 11.17
of Title 2 of the Family Code when it has received
no specific appropriation in the currently effective

Appropriations Act to meet the administrative costs.
of the program and when no other source of appro-
priated funds may be available for this purpose?' "

Section 34. 05 of the Family Code requires your Department to make
investigations promptly after receiving oral or written reports of child abuse.
The Legislature has not appropriated any moneys to the Department to meet
the administrative expenses of performing these functions.   You inquire:

"To what extent is the Department obligated to per-
form the tasks mandated by Section 34. 05 of Title 2
of the Family Code when it has received no specific
appropriations to meet the administrative expenses
of such activity? "

All of these inquiries relate to the obligation of your Department when it
is burdened with a statutory duty but receives no specific appropriation to
carry out the mandate.

It is not necessary that appropriations be specific with reference to each
such program.   All three of these programs are closely related to child
welfare and Item 34 B of the General Appropriations Act grants your department
funds to be expended for "child welfare services". (H. B. 139, 63rd Leg.,
at II-45).   We are of the opinion that such appropriation is sufficiently specific
to justify expending funds and using personnel in connection with any of the
programs and duties mentioned in your letter.

As to whether the amount of the appropriation is sufficient to enable you
to effectively establish and maintain these programs and to continue with your
present duties, we express no opinion.

### SUMMARY

The provision of § 11. 17(c) of Title 2 of the Family Code,
authorizing the Department of Public Welfare to charge a reasonable
fee to cover the cost of providing information from a central records
file does not constitute an appropriation of such fees to the Department

for that purpose.  However, the appropriation for child welfare services in the Appropriations Act constitutes an appropriation to the Department for providing such services as well as for establishing and maintaining the contemplated central records file and for conducting the investigations of child abuse provided in § 34. 05 of the Family Code.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee